Michael Nelson and Associates, Inc.
dba Navajo Westerners, *Appellant,*
*vs.*
DCI Shopping Center, Inc., *Appellee*
Decided August 15, 1985

## OPINION

*Before McCabe, Chief Justice, Tso and Walters, Associate Justices.*

*Lawrence Ruzow, Esquire, Window Rock, Arizona for Appellant and C. Benson Hufford, Esquire, Flagstaff, Arizona for Appellee.*

Notice of Appeal was filed in this matter on May 25, 1982, appealing an Order and Judgment of the trial court entered on April 27, 1982.

On or about June 19, 1979, Michael Nelson and Associates, Inc. (hereafter MNA) and DCI Shopping Center, Inc. (hereafter DCISCI) entered into a sublease agreement. The lease was for commercial space in the Tseyi' Shopping Center in Chinle, Arizona. DCISCI had a lease with the Navajo Nation for the shopping center and in turn subleased space in the shopping center to individual businesses. MNA does business as "Navajo Westerners" and intended to operate a western clothing store in the shopping center.

At the time of the lease agreement the shopping center was still under construction. The lease agreement called for the provisions to become effective thirty days after DCISCI substantially completed construction of the premises or the date that MNA opened for business, whichever happened first. The lease also contained a provision that prohibited DCISCI from leasing commercial space to an establishment engaged in the sale of western clothing and related items. This restriction applied to the initial construction phase of the shopping center, Bashas' Market, Inc. was specifically exempted.

During the construction period in the fall of 1980, DCISCI approached

MNA regarding a waiver of this provision. DCISCI was negotiating a lease with Yellow Front Stores and sought the waiver from MNA in connection with those negotiations.

Although MNA never executed the waiver, it became concerned about the manner in which the shopping center was developing. During the fall of 1980, on one or more occasions, MNA verbally infomed DCISCI that MNA was terminating its lease. DCISCI accepted the verbal termination and asked MNA to confirm the verbal termination in writing.

On December 26, 1980, MNA sent DCISCI a letter stating that the lease should be considered terminated upon receipt of the letter. By letter dated January 12, 1981, DCISCI notified MNA that it accepted MNA's offer to terminate the lease agreement. By letter dated January 8, 1981, MNA advised DCISCI that it wished to continue with the lease agreement. This letter was received by DCISCI on January 12, 1981, after it had mailed its written acceptance of the termination.

On February 17, 1981, MNA filed a complaint against DCISCI for repudiation of the lease agreement. The complaint also alleged that MNA was a third-party beneficiary of the lease agreement between the Navajo Nation and DCISCI which contained Navajo preference provisions. Plaintiff alleged violations of those provisions by DCISCI and damage to MNA as a result.

The matter was tried on April 5 and 6, 1982. On April 27, 1982, the trial court entered an Order and Judgment against MNA and for DCISCI.

MNA appealed from this Order. On June 3, 1983, a Statement of Facts and Issues signed by counsel for both parties was submitted to the Court of Appeals. The Court of Appeals has relied upon the facts stipulated by the parties in reaching its decision in this matter. The parties agreed upon a statement of six issues. The Court is of the opinion that several of the issues may be resolved by examining the status of the lease agreement during the period between the fall of 1980 and January 12, 1981.

At the onset of this period there was a valid agreement between MNA and DCISCI. Thereafter DCISCI and MNA had discussions regarding a modification of the lease. No agreement was ever reached on the modification. Subsequently the parties orally agreed to terminate the lease and this agreement was reduced to writing. As of January 12, 1981, there was no lease agreement between the parties.

Parties to a contract may agree to a subsequent modification, termination, or recission of the contract or agreement. The parties to the original contract may make a new agreement which modifies or replaces the original. In this case the parties made a new and binding contract or agreement. Under the new agreement the rights and duties of both parties under the lease were terminated. The requirements for a contract were met in the agreement to terminate the lease. There was consideration in that both

parties gave up rights under the lease. The parties clearly meant to terminate the lease. Any requirements of a writing are satisfied by the exchange of letters between the parties.

Two issues in addition to the status of the parties were raised on appeal. These issues are whether MNA was a third-party beneficiary of the lease between the Navajo Nation and DCISCI which required Navajo preference and whether MNA was given adequate Navajo preference.

The provision of the Navajo Nation-DCISCI lease regarding Navajo preference reads as follows:

The above notwithstanding, Lessee, in an subleasing of any right to or interest in this lease or any of the improvements on the leased premises, shall give preference to businesses owned and operated by members of the Navajo Tribe to the extent permitted by law. However, such preference shall be conditional upon Lessee's determination that such businesses *(i)* are economically feasible and *(ii)* will promote the social and business objectives of the shopping center.

Without determining whether MNA was a third-party beneficiary of the Navajo Nation-DCISCI lease, the Court finds that MNA did not meet the burden of showing that MNA was not given adequate preference. The section cited above requires Navajo preference in the subleasing of any portion of the master lease. Based upon the stipulated facts of the parties, MNA was given a sublease, the rental rate was better for the first year than the rate given to any other lessee of similar sized space, and MNA was given first choice of space in the shopping center. Further, the stipulated facts show that although DCISCI asked MNA to modify the original lease, DCISCI never indicated to MNA that DCISCI would not abide by the terms of the lease signed on July 19, 1979. Further, it does not appear to the Court that the space originally leased to MNA was subsequently leased to a non-Navajo.

By this decision the Court does not intend to establish any guidelines for Navajo preference. Rather the Court finds that the evidence submitted to the trial court was not sufficient to establish that "Navajo preference" as used in the Navajo Nation-DCISCI lease carried with it certain guidelines, meanings, or standards not elaborated in the lease itself. The Court further finds that MNA did not present sufficient evidence to show that MNA was not given "Navajo preference" as such term could reasonably be interpreted in the context of the lease provision cited above.

The decision of the trial court is affirmed.